UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JOHN O'HARA, both individually and in his official
capacity on behalf of O'HARA FOR SENATE, and
O'HARA FOR SENATE,

                        Plaintiffs,

                -against-

ELIZABETH COHEN-SANCHEZ a/k/a ZEE COHEN
SANCHEZ, both individually and in her official capacity
as the executive director of SOLE STRATEGIES LLC,
and SOLE STRATEGIES, LLC,

                       Defendants.
------------------------------------------------------------------- x

MEMORANDUM AND ORDER

No. 22-CV-6209-RPK-JRC

JAMES R. CHO, United States Magistrate Judge:

John O'Hara ("plaintiff" or "O'Hara"), on behalf of himself and his political campaign O'Hara for Senate,[1] brings this breach of contract action against Elizabeth Cohen-Sanchez ("Cohen-Sanchez") and Sole Strategies, LLC ("Sole Strategies," and together with Cohen-Sanchez "defendants"), alleging that defendants failed to adequately perform the ballot access services they agreed to provide for O'Hara for Senate pursuant to a client service agreement (the "Agreement"). *See generally* Not. of Removal Ex. A ("Compl."), Dkt. 1-2. Plaintiff also raises various fraud allegations, *see* Compl. ¶¶ 48–59, and contends that the Agreement was invalid because it allowed defendants to violate New York Penal Law Sections 175.30 and 175.35, *see* Pl.'s Br. in Support of Cross-Mot. for Summ. J. ("Pl.'s Br."), Dkt. 31-1 at ECF pages[2] 6–9.

---

[1] Both O'Hara and O'Hara for Senate are named plaintiffs in the present action. The Court, however, refers to O'Hara in the singular with the understanding that he brings this action both individually and in his official capacity on behalf of O'Hara for Senate.

[2] References to "ECF page" refer to the page designation issued by the Court's Electronic Case Filing system.

Plaintiff also seeks attorney's fees in connection with the present action. *See generally* Compl. ¶¶ 60–68; Pl.'s Br., Dkt. 31-1 at ECF pages 13–14. Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Court grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.[3]

## BACKGROUND

### I. Factual Background

The facts in this section are drawn from the complaint, the exhibits filed with the parties' summary judgment motions, and from defendants' Local Rule 56.1 statement.[4] *See* Compl., Dkt. 1-2; Defs.' R. 56.1 Statement, Dkt. 31 at ECF pages 57–59.

Plaintiff John O'Hara is a duly licensed attorney in the State of New York who sought election to the New York State Senate in June 2022. *See* Defs.' R. 56.1 Statement ¶ 2, Dkt. 31 at ECF page 58; *see also* Compl. ¶¶ 17, 29. In order to appear on the ballot for New York State Senate, O'Hara needed to collect signatures from 850 registered democrats residing within New York Senate District # 17. Compl. ¶ 29.

---

[3] The parties consented to the undersigned for purposes of ruling on the motions for summary judgment. *See* Dkt. 25.

[4] O'Hara did not file a Rule 56.1 Statement and similarly did not file a response to defendants' Rule 56.1 statement. *See* Defs.' Br. in Opp. to Pl.'s Cross-Mot. for Summ. J. ("Defs.' Opp. Br."), Dkt. 31-3 at ECF page 4 ("Plaintiff submits no statement of facts pursuant to Local Civil [Rule] 56.1(a) and no response to Defendants' Statement of Material Facts."). Instead, plaintiff refers to various "undisputed facts" throughout his brief. *See, e.g.*, Pl.'s Br., Dkt. 31-1 at ECF page 2 ("[T]here is no dispute that the Defendants['] work product [was] improperly performed."); *id.* at ECF page 6 ("[T]he undisputed fact is [that] Plaintiff entered into a contract with the defendants who advertised their training of [signature] gatherers in New York Law, but instead cut corners."). As such, the facts set forth in defendants' Rule 56.1 statement are generally deemed to be admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 128 n.3 (S.D.N.Y. 2020) ("If [pro se attorney] Plaintiff sought to provide his own version of the events or dispute the facts at issue, it was his obligation to do so in accordance with the Local Rules."); *see also Clevenger v. U.S. Dep't of Just.*, No. 18-CV-1568, 2020 WL 1846565, at *1 n.1 (E.D.N.Y. Apr. 3, 2020) ("While plaintiff is proceeding *pro se*, plaintiff is an attorney and thus he is not entitled to the liberal reading that *pro se* plaintiffs are generally afforded.").

Defendant Sole Strategies provides field operation services for political campaigns. *See* Decl. of Elizabeth Cohen-Sanchez ("Cohen-Sanchez Decl.") ¶ 6, Dkt. 31 at ECF page 32; *see also* Compl. ¶ 24. O'Hara retained Sole Strategies to assist him with collecting signatures for his designating petitions. *See* Defs.' R. 56.1 Statement ¶¶ 1, 3, Dkt. 31 at ECF page 58; Compl. ¶ 10. On or about June 4, 2022, O'Hara entered into a contract with Sole Strategies (the "Agreement") whereby Sole Strategies agreed to "gather[] petitions/signatures" and "provide 66 shifts/330 hours of canvassing from June 4th through June 7th[,] 2022 for the purpose of gathering petitions." *See* Defs.' R. 56.1 Statement ¶¶ 1, 3, Dkt. 31 at ECF page 58; Client Service Agreement, Dkt. 31 at ECF page 36. Plaintiff paid Sole Strategies a total of $19,170 for the services provided.[5] *See* Client Service Agreement, Dkt. 31 at ECF page 37; Defs.' R. 56.1 Statement ¶ 5, Dkt. 31 at ECF page 58.

According to the terms of the Agreement, Sole Strategies "d[id] not guarantee any specific amount of *valid* signatures or contact rate," and "[d]issatisfaction with your specific success in raising valid [signatures][6] during the Service is not [a] valid reason[] for termination of this Agreement or request of any monies returned." Client Service Agreement (Service Release, Consistency provision at ¶ 3), Dkt. 31 at ECF page 38. The Agreement also contained a maximum damages clause, which provides that: "In no event shall Provider's aggregate liability arising out of or related to this Agreement, whether arising out of or related to breach of contract, tort (including negligence) or otherwise, exceed the total of the amounts paid to Provider

---

[5] According to plaintiff he paid defendants a total of $19,798. Compl. ¶ 22. However, plaintiff's submissions provide no support for this figure and instead indicate that plaintiff paid defendants $19,170 in three installments. *See* Pl.'s Cross-Mot. for Summ. J. Ex. B, Dkt. 31-1 at ECF pages 46–47.

[6] The second sentence of this provision does not include the word "signatures." This omission appears to be a typographical error. Both parties in their briefing, when referencing the second sentence of this provision, inserted the word "signatures." *See, e.g.*, Cohen-Sanchez Decl. ¶ 10, Dkt. 31 at ECF page 33; Pl.'s Br., Dkt. 31-1 at ECF page 7. The inclusion of the word "signatures" does not change this Court's analysis of plaintiff's claims.

3

pursuant to this Agreement in the year preceding the event giving rise to the claim." *Id.* at ECF page 39. The Agreement further states, in underlined and italicized font, that "*[e]ntering this contract with Sole Strategies does not guarantee election wins, or specific campaign results.*" *Id.*

Between June 4 and 7, 2022, Sole Strategies collected 2,437 signatures on behalf of O'Hara for Senate. *See* Defs.' R. 56.1 Statement ¶¶ 4, 6, Dkt. 31 at ECF page 58; Compl. ¶ 30; Pl.'s Cross-Mot. for Summ. J. Ex. D ("Clerk's Report"), Dkt. 31-1 at ECF page 63. O'Hara submitted the designating petitions containing these 2,437 signatures to the Board of Elections in the City of New York on June 10, 2022. *See* Pl.'s Cross-Mot. for Summ. J. Ex. C, Dkt. 31-1 at ECF pages 55–59; *id.* Ex. E at ECF page 67. On June 20, 2022, the Clerk issued a report finding that only 634 of the 2,437 signatures were valid. Clerk's Report, Dkt. 31-1 at ECF page 63. O'Hara brought a petition in New York State Court pursuant to Election Law Section 16-102 seeking to have his designating petitions validated so that he could appear as a candidate on the ballot for the August 23, 2022, primary election. *See* Pl.'s Cross-Mot. for Summ. J. Ex. E, Dkt. 31-1 at ECF pages 66–67. Based on a line-by-line review of the signatures on O'Hara's designating petitions, the New York Supreme Court determined that in fact only 567 of the signatures were valid. *See id.* at ECF page 77. The Court denied O'Hara's petition and O'Hara was not included on the ballot for the August 23, 2022, democratic primary election. *Id.*

## II. Procedural Background

Plaintiff filed the present lawsuit in state court on or about August 1, 2022. *See* Not. of Removal ¶ 1, Dkt. 1. Defendants removed the action to federal court on October 14, 2022, claiming diversity jurisdiction as a basis for removal. *See id.* ¶¶ 2–3. The Court denied plaintiff's subsequent motion to remand. *See* Mot. to Remand, Dkt. 5; Order dated Sept. 12,

2023.  The parties filed their fully-briefed cross motions for summary judgment on March 7, 2024.[7]  *See* Dkt. 31.  The parties consented to the undersigned for purposes of ruling on the cross motions for summary judgment.  *See* Dkt. 25.

At the time plaintiff filed his complaint he was represented by Ezra B. Glaser.  However, Mr. Glaser subsequently made a motion to withdraw as counsel "due to numerous professional and personal disagreements" with O'Hara, *see* Dkt. 8, which the Court granted on March 15, 2023, *see* Minute Entry dated Mar. 15, 2023.  During the March 15, 2023 conference, O'Hara indicated that he planned on representing himself in this matter.  *See* Minute Entry dated Mar. 15, 2023.  O'Hara has not retained counsel following Mr. Glaser's withdrawal and is currently proceeding as a *pro se* attorney on behalf of himself and his campaign committee, O'Hara for Senate.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is therefore entitled to judgment as a matter of law.  *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 69 (2d Cir. 2015); Fed. R. Civ. P. 56(a).  "In a breach of contract action, summary judgment is appropriate where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning."  *Am. Home Prods. Corp. v. CAMBR Co.*, No. 00-CV-2021, 2001 WL 79903, at *2 (S.D.N.Y. Jan. 30, 2001) (citing *Fulton Congeneration Assoc. v. Niagara Mohawk Power Corp.,* 84 F.3d 91, 98 (2d Cir. 1996)).  "Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."  *Id.* (alteration in original) (internal quotation

---

[7] O'Hara did not file a reply brief.  *See* Dkt. 32.

marks and citation omitted).

"In determining whether summary judgment is warranted, 'the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" *Shoreline Aviation, Inc. v. Sound Aircraft Flight Enterprises, Inc.*, No. 20-CV-2161, 2024 WL 4040352, at *7 (E.D.N.Y. Aug. 12, 2024) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986)).

"Cross-motions for summary judgment do not alter the basic standard, but simply require the court to determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y. 2021) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). When parties cross move for summary judgment, "[e]ach movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate." *Shoreline Aviation*, 2024 WL 4040352, at *6 (citing *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004)).

Finally, although "*pro se* litigants typically enjoy special solicitude," this special consideration does not apply where—as here—the *pro se* party is a practicing attorney.[8] *Cox v.*

---

[8] By Order dated March 29, 2024, the Honorable Rachel P. Kovner directed defendants to indicate whether they had complied with Local Civil Rule 56.2 by serving plaintiff, as a *pro se* party, with the relevant notice regarding summary judgment practice. *See* Order dated Mar. 29, 2024. Defendants responded that they "did not serve a separate Pro Se Notice" pursuant to Local Civil Rule 56.2 because "Mr. O'Hara is an attorney licensed to practice law in New York." *See* Dkt. 33. Although it would have been prudent for defendants to have served O'Hara with a Local Civil Rule 56.2 notice, *see, e.g.*, *Clevenger*, 2020 WL 1846565, at *1 n.2 ("*Even though he is an attorney*, defendants provided plaintiff with Local Civil Rule 56.2 notice regarding summary judgment." (emphasis added)), this Court finds that providing plaintiff with the Local Civil Rule 56.2 notice was not necessary given that O'Hara is a practicing attorney and not entitled to the same protections as *pro se* litigants. Further, the purpose of Local Civil Rule 56.2 "is to ensure that a party acting *pro se* 'understands its burden in responding to a motion for summary judgment, and the consequences of failing to do so.'" *White v. Roosevelt Union Sch. Dist. Bd. of Educ.*, No. 15-CV-1035, 2023 WL 4420117, at *1 (E.D.N.Y. July 10, 2023) (quoting *Rivera v. Goulart*, No. 15-CV-2197, 2018 WL 4609106, at *3 (S.D.N.Y. Sept. 25, 2018)). Here, because plaintiff filed a cross-motion for summary judgment, a brief in opposition to defendants' motion for summary judgment, and also given plaintiff's familiarity with summary

*Dep't of Just.*, No. 17-CV-3329, 2022 WL 21304584, at \*4 (E.D.N.Y. Mar. 30, 2022), *aff'd*, 111 F.4th 198 (2d Cir. 2024); *see also Clevenger*, 2020 WL 1846565, at \*1 n.1; *Brannon*, 434 F. Supp. 3d at 128 n.3 ("Plaintiff not entitled to the 'special solicitude' typically afforded pro se parties because he is an attorney." (citing *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010)); *Hector v. Hector*, No. 22-CV-5990, 2023 WL 6038025, at \*4 n.4 (S.D.N.Y. Sept. 15, 2023) ("[A]lthough plaintiff is proceeding *pro se*, he is a practicing attorney and thus not entitled to the special solicitude typically afforded to *pro se* plaintiffs."); *Caprio v. Gorawara*, No. 23-CV-1410, 2024 WL 1412157, at \*1–2 (D. Conn. Apr. 2, 2024) (declining to afford a *pro se* attorney the "special solicitude" normally afforded to *pro se* litigants).

## DISCUSSION

Plaintiff has not established a claim for breach of contract, fraud, or a basis for attorney's fees. For the reasons set forth below, the Court grants defendants' motion for summary judgment, and denies plaintiff's cross-motion for summary judgment.

### I. O'Hara Has Not Established a Claim for Breach of Contract

Considering the record in the light most favorable to plaintiff, defendants did not breach the terms of the Agreement by failing to collect a sufficient number of valid signatures. Therefore, defendants are entitled to summary judgment on the first cause of action.

#### A. New York law governs the Agreement at issue.

Although the Agreement contains a choice-of-law provision designating Delaware law as the applicable governing law, *see* Client Service Agreement, Dkt. 31 at ECF page 40, that choice-of-law provision is not controlling in this instance because Delaware has no significant ties to the contract or the matter in dispute.

---

judgment motion practice, the Court finds that service of the Local Civil Rule 56.2 notice was not required in the context of this case.

"The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *DarkPulse, Inc. v. Crown Bridge Partners LLC*, No. 23-7550-cv, 2024 WL 3872725, at *2 (2d Cir. Aug. 19, 2024) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005)).  Because the Court is exercising diversity jurisdiction, the substantive law of the forum state—in this case New York—applies.  *See 82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R & M)*, 951 F. Supp. 2d 376, 381 (E.D.N.Y. 2013) ("A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. . . [and] [c]hoice-of-law questions are also resolved based on the laws of the state in which the district court sits.").  "The general rule under New York law . . . is that courts will generally enforce choice-of-law clauses and that contracts should be interpreted so as to effectuate the parties' intent." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) (internal quotation marks and citation omitted); *see also Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006) ("[C]ourts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction.").

However, "New York law allows a court to disregard the parties' choice when the most significant contacts with the matter in dispute are in another state." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam) (internal quotation marks and citation omitted).  For example, in *TGG Ultimate Holdings*, the court invalidated a choice-of-law provision designating New York law as the applicable law where the plaintiff "failed to demonstrate the existence of any contacts of this action with New York other than the choice-of-law provision itself." *TGG Ultimate Holdings, Inc. v. Hollett*, 224 F. Supp. 3d 275, 282

8

(S.D.N.Y. 2016). The court noted that the contracts at issue were not negotiated in New York and did not specify New York as the place of performance, the plaintiff corporation was not a citizen of New York, and the Defendants were not residents of nor domiciled in New York. *Id.* Similarly, in *Star Insurance Company*, the court invalidated an Ohio choice-of-law provision where plaintiff and defendants were not domiciled in Ohio and the place of performance and the location of the subject matter of the contract were both in New York. *See Star Ins. Co. v. Champion Const. Servs. Corp.*, No. 13-CV-3635, 2014 WL 4065093, at *3 (E.D.N.Y. July 30, 2014), *report and recommendation adopted*, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014).

Here, like in *TGG Ultimate Holdings* and *Star Insurance Company*, nothing in the record before the Court connects the contract or dispute at issue to Delaware. Plaintiff is a resident of New York, and the Agreement was executed in New York. Compl. ¶¶ 3, 7. Further, the parties agreed that the contract would be performed in New York, and the acts that plaintiff complains of—namely the manner in which the contract was performed—occurred in New York. *See* Client Service Agreement, Dkt. 31 at ECF page 37; Compl. ¶ 17. Finally, the parties are not residents of Delaware and Sole Strategies has its principal place of business in Nevada, not Delaware. *See* Not. of Removal ¶ 4, Dkt. 1; *Cap Gemini*, 346 F.3d at 366 (finding that a New York choice-of-law provision "would be reasonable, and hence enforceable, if [plaintiff's] 'principal place of business' were in New York"). For these reasons, notwithstanding the choice-of-law provision, the Court applies New York law to the Agreement. *See Star Ins.*, 2014 WL 4065093, at *3 (holding that "there [were] insufficient contacts with Ohio for the choice-of-law provision to be valid or enforceable"); *Frankel v. Citicorp Ins. Servs., Inc.*, 913 N.Y.S.2d 254, 259 (2d Dep't 2010) (holding that under New York law, courts "may decline to enforce

9

choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction").

### B. Plaintiff has failed to establish a claim for breach of contract.

Under New York law, to establish a claim for breach of contract, a plaintiff must establish "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of [the] contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996)).

Here, plaintiff has failed to establish the third element of a breach of contract claim— namely, that defendants breached the terms of the Agreement. Under the terms of the Agreement, defendants agreed to "provide 66 shifts/330 hours of canvassing from June 4th through June 7th[,] 2022 for the purpose of gathering petitions." Client Service Agreement, Dkt. 31 at ECF page 36. Plaintiff does not argue that defendants failed to perform the requisite number of shifts or hours. Instead, plaintiff contends that "over 75% of the signatures collected by the defendants did not comply with the language in the contract," and that "there is no dispute that the Defendants['] work product [was] improperly performed." Pl.'s Br., Dkt. 31-1 at ECF pages 2, 5. However, nowhere in the contract does it provide that defendants were to collect a specific number of signatures. Nor does the contract provide that defendants were to collect a specific number of *valid* signatures. On the contrary, the Agreement contains a "Service Release" section (the "Waiver"[9]), which provides that Sole Strategies "does not guarantee any

---

[9] The Agreement also contains a limitation on damages. *See* Client Service Agreement, Dkt. 31 at ECF page 39. However, the Court need not consider the issue of damages because it finds that the Waiver is valid and plaintiff has not established a claim for breach of contract. The Court does note that such limitations on damages are generally enforceable under New York law unless they are deemed unconscionable. *See Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805 n.4 (N.Y. 2014) ("Contract provisions limiting remedies are enforceable unless they are unconscionable.").

10

specific amount of *valid* signatures or contact rate," and "[d]issatisfaction with your specific success in raising valid [signatures] during the Service is not [a] valid reason[] for termination of this Agreement or request of any monies returned."  Client Service Agreement (Service Release, Consistency provision at ¶ 3), Dkt. 31 at ECF page 38.

The Agreement and the Waiver provision set forth therein are unambiguous, and defendants were not required, under the terms of the contract, to collect a specific number of valid signatures.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) ("[A] motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.").  Therefore, plaintiff has failed to establish a claim for breach of contract, and defendants are entitled to summary judgment on plaintiff's first cause of action.  *See Uzakova v. Javaheri*, No. 21-CV-550, 2024 WL 1332610, at *4 (E.D.N.Y. Mar. 28, 2024) ("The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a showing sufficient to establish the existence of each element essential to his case since a complete failure of proof concerning an essential element of his case necessarily renders all other facts immaterial." (cleaned up) (citation omitted)).

In addition, under New York law, "[i]t is well-settled that contractual limitations on liability are generally enforceable" unless they limit liability for damages caused by gross negligence.  *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 96 N.Y.S.3d 173, 176 (1st Dep't 2019).  Here, plaintiff does not argue that Sole Strategies' conduct was grossly negligent,[10] nor does plaintiff argue that the language of the Waiver is ambiguous.  Instead,

---

[10] In fact, according to defendants, "O'Hara provided door to door data to Sole [Strategies] from his consultants Prime NY that he insisted be used."  Defs.' Br., Dkt. 31 at ECF page 47.

11

plaintiff argues that the Waiver is unenforceable as a matter of law because it would allow defendants to violate New York State Penal Law Sections 175.30 and 175.35.[11]

Section 175.30 provides, in relevant part, that "[a] person is guilty of offering a false instrument for filing in the second degree when, *knowing that a written instrument contains a false statement or false information*, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." N.Y. Penal Law § 175.30 (emphasis added). Section 175.35 similarly provides that:

> [a] person is guilty of offering a false instrument for filing in the first degree when . . . *knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision*, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation . . . .

N.Y. Penal Law § 175.35 (emphasis added).

However, plaintiff fails to offer any evidence that defendants knew that O'Hara's designating petitions contained an insufficient number of valid signatures, as would be required to satisfy the knowledge requirements of Sections 175.30 and 175.35.[12] Instead, the plain language of the contract required defendants to gather signatures on O'Hara's behalf and to do so

---

[11] Plaintiff argues that the contract itself is void and unenforceable as against public policy. *See* Pl.'s Br., Dkt. 31-1 at ECF pages 8–9. However, at face value, plaintiff's argument would appear to preclude plaintiff's breach of contract claim. *See Commonwealth Assocs. v. Palomar Med. Techs., Inc.*, No. 96-CV-1868, 1997 WL 26723, at *1 (S.D.N.Y. Jan. 23, 1997) (a claim for breach of contract under New York law requires plaintiff to prove the existence of a valid contract); *Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 345 (S.D.N.Y. 2021) (same).

[12] Plaintiff asserts that "Sole-Strategies had actual knowledge that the instruments filed with the Board of Elections had insufficient valid signatures." Pl.'s Br., Dkt. 31-1 at ECF page 7. However, plaintiff provides no support for this statement, and thus it does not raise a genuine issue of material fact. *See Hicks v. Baines,* 593 F.3d 159, 166 (2d Cir. 2010) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." (cleaned up) (citation omitted)).

for a specific amount of time: 330 hours. *See* Client Service Agreement, Dkt. 31 at ECF page 36. O'Hara does not contend that defendants failed to perform the requisite number of shifts (66), and the contract does not require defendants to collect a *specific* number of *valid* signatures. *Id.* at ECF page 38. Rather, the express language of the contract provides that the Agreement "does not guarantee any specific amount of *valid* signatures." *Id.* at ECF page 38.

Because plaintiff has failed to point to any ambiguity in the language of the contract, and because plaintiff has failed to introduce any evidence regarding the existence of a factual dispute between the parties, the Court finds the Waiver unambiguous and enforceable. Accordingly, the Court grants defendants' motion for summary judgment on plaintiff's breach of contract claim.

## II. O'Hara Has Not Established a Claim for Fraud

Even considering the record in the light most favorable to O'Hara, he has failed to establish the elements of a fraud claim. Accordingly, defendants are entitled to summary judgment on the second cause of action.

"The essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Orlando v. Kukielka*, 836 N.Y.S.2d 252, 254 (2d Dep't 2007). However, "[i]t is well settled that a cause of action sounding in fraud will not arise when the only fraud charged relates to a breach of contract." *Rubinberg v. Correia Designs, Ltd.*, 692 N.Y.S.2d 172, 173–74 (2d Dep't 1999).

Here, plaintiff alleges that "Defendants, by [their] agents, managers, servants and or employees, due to their fraudulent activities, induced the Plaintiff to rely on their false representations as contained within an agreement for ballot access services . . . ." Compl. ¶ 49.

13

Plaintiff contends that "[a]mong the false representations of the Defendants relied on by the Plaintiff[] was the representation that services would be performed and completed within a timely manner in full compliance with the election law." *Id.* ¶ 50.  In his opposition brief, plaintiff describes his second cause of action as "detail[ing] the fraudulent acts by defendants, which submitted fraudulent signatures to the plaintiff to be filed with the New York City Board of Elections, a government agency." Pl.'s Opp. Br., Dkt. 31-2 at ECF page 14.  Plaintiff further states that the second cause of action "also details a material breach of the contract." *Id.* at ECF page 16.

The complaint appears to allege two separate false representations:  (1) that defendants' "services would be performed and completed within a timely manner"; and (2) that the services would be completed "in full compliance with the election law." *See* Compl. ¶ 50.  The Court addresses each of these alleged false representations in turn.

First, the Agreement *does* provide that all services would be completed by June 7, 2022. *See* Client Service Agreement, Dkt. 31 at ECF page 37.  However, plaintiff does not allege that defendants failed to complete the services in a timely manner.  Plaintiff has not presented any evidence to suggest that defendants failed to complete the services by June 7, 2022.  Thus, the Court finds that plaintiff fails to introduce a triable issue of fact as to the first alleged misrepresentation. *See Hicks,* 593 F.3d at 166 ("Mere conclusory allegations . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." (citation omitted)).

Second, plaintiff appears to argue that defendants misrepresented that canvassers who pass the interview, background check, and hands-on training requirements "are asked to sign a contract that lays out all the laws in New York State." *See* Client Service Agreement, Dkt. 31 at

14

ECF page 37; Pl.'s Opp. Br., Dkt. 31-2 at ECF page 15 ("[T]he contract specifically stated that the people collecting the signatures signed statements that they were familiar with the laws in the State of New York regarding petitioning."). However, plaintiff has not alleged nor offered any evidence to suggest that the canvassers failed to sign such a statement. Plaintiff further appears to argue the statements in the Agreement regarding how the work would be performed were inherently misleading because defendants failed to complete the services in a satisfactory manner. But plaintiff cannot morph a breach of contract claim into a fraud claim. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").

      For example, in *Rubinberg,* the Second Department dismissed plaintiffs' causes of action sounding in fraud where the fraud claims were based on alleged misrepresentations relating to compensation allegedly due under the parties' contract. *See Rubinberg*, 692 N.Y.S.2d at 173. The court found that the allegations plaintiffs offered in support of the fraud charges "were not sufficiently distinct from the breach of contract claim to constitute a separate cause of action sounding in fraud." *Id.*; *see also Tsilogiannis v. 53-11 90th St. Assocs., Inc.*, 293 A.D.2d 468, 468–69 (2d Dep't 2002) (holding that a claim for fraud in the inducement to enter a contract was "insufficient on its face because the alleged fraud is premised upon the breach of a duty arising under a contract"); *CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 426 (S.D.N.Y. 2007) ("Fraud claims should be dismissed as redundant when the only fraud alleged is that the defendants were not sincere when they promised to perform under the contract."), *aff'd*, 328 F. App'x 56 (2d Cir. 2009).

15

Here, like in *Rubinberg* and *Tsilogiannis*, the allegations plaintiff offers in support of his second cause of action are not sufficiently distinct from his breach of contract claim to constitute a separate cause of action sounding in fraud. For example, plaintiff alleges that defendants "induced [plaintiff] to rely on their false representations as contained within an agreement for ballot access services." Compl. ¶ 49. However, the alleged false representations relate to how the contract was to be performed, and are thus not sufficiently distinct from plaintiff's breach of contract claim. *See Rubinberg*, 692 N.Y.S.2d at 173. Additionally, plaintiff has not sufficiently established that defendants misrepresented any material facts, as is required under New York law to support a separate cause of action sounding in fraud.[13] *See First Bank of Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21 (1st Dep't 1999) (holding that "a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract," such as "if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts").

The Court therefore finds that plaintiff has failed to sufficiently plead a cause of action sounding in fraud and grants defendants' motion for summary judgment as to the second cause of action.

### III.   O'Hara Is Not Entitled to Attorney's Fees

Plaintiff appears to allege in the third cause of action a claim for attorney's fees. Plaintiff is not entitled to attorney's fees, and the Court grants defendants' motion for summary judgment as to the third cause of action.[14]

---

[13] As noted above, plaintiff's allegation that defendants *falsely* represented that their services would be performed in a timely manner and in full compliance with election law is unsupported.

[14] As defendants correctly note in their brief, attorney's fees are a type of damages and not a separate cause of action. *See* Defs.' Br., Dkt. 31 at ECF page 54.

16

In general, attorney's fees may only be awarded to the prevailing party "where authorized by statute, agreement or court rule." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 822 N.E.2d 777, 779 (N.Y. 2004); *see Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (applying New York substantive law to assess entitlement to attorney's fees in a diversity case).

Here, O'Hara argues that attorney's fees are recoverable as damages in a breach of contract case where they are "the natural and probable consequence of the breach."[15]  Pl.'s Br., Dkt. 31-1 at ECF page 14 (quoting *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010)).  However, under New York law, as set forth in further detail below, attorney's fees are treated as "incidents of litigation" rather than damages. *Congel v. Malfitano*, 101 N.E.3d 341, 351–52 (N.Y. 2018).

Plaintiff fails to cite to any statute or court ruling that would entitle him to attorney's fees.  Instead, he argues that he can recover attorney's fees "by proving with a 'reasonable degree of certainty' that [his] damages were caused by [defendants'] breach."  Pl.'s Br., Dkt. 31-1 at ECF page 14 (quoting *In re: Residential Capital, LLC*, 533 B.R. 379, 407 (Bankr. S.D.N.Y. 2015)).  However, the case plaintiff cites in support of his position that he is entitled to attorney's fees is inapposite.  First, *In re: Residential Capital, LLC* is a bankruptcy case that dealt with the question of whether the purchaser of Chapter 11 debtor's mortgage loan servicing platform and servicing rights was entitled to recover the costs of segregating and delivering residential mortgage loan files acquired by the purchaser.  *See Residential Capital*, 533 B.R. at

---

[15] This Court notes that litigation often results from contractual disputes.  Plaintiff's proposed rule would result in attorney's fees being recoverable in virtually all breach of contract cases, and is diametrically opposed to the "well-established" American rule that attorney's fees are generally not recoverable.  *See Summit Valley Indus. Inc. v. Loc. 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982) ("Under the American Rule it is well established that attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." (internal quotation marks and citation omitted)).

17

383–84.  The portion of the decision plaintiff cites states that "[r]egardless of the damages sought, the plaintiff bears the burden of proof of establishing that any claimed damages were caused by defendant's breach to a reasonable degree of certainty." *Id.* at 407 (internal quotation marks and citation omitted).  However, the sentence plaintiff quotes relates back to the prior sentence of the opinion, which states that "[u]nder New York law, breach of contract damages may fall into any one of three categories:  expectation, reliance, and restitution." *Id.*  Nowhere in the decision does the Court mention attorney's fees, and plaintiff fails to rebut the general presumption that attorney's fees are not recoverable in a breach of contract dispute absent a contractual provision providing otherwise. *See McGraw-Hill Cos., Inc. v. Vanguard Index Tr.*, 139 F. Supp. 2d 544, 556 n.6 (S.D.N.Y. 2001) ("Under New York law, '[g]enerally, attorney's fees are not recoverable as damages in an action for breach of contract . . . unless expressly agreed to by the parties.'" (alterations in original) (quoting *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 344 N.E.2d 391, 394 (N.Y. 1976))), *aff'd*, 27 F. App'x 23 (2d Cir. 2001).[16]

The Court finds that plaintiff's conclusory statements regarding his entitlement to attorney's fees fail to defeat defendants' motion for summary judgment on the third cause of action.  Because plaintiff has failed to raise a triable issue of fact on the issue of his entitlement to attorney's fees, the Court grants defendants' motion for summary judgment on the third cause of action.

---

[16] Although plaintiff does not raise the argument, the Court notes that the Agreement between the parties does contain a provision on attorney's fees, which provides that "[i]n the event of any dispute between the Parties concerning the terms and provisions of this Agreement, the party prevailing in such dispute shall be entitled to collect from the other party all costs incurred in such dispute, including reasonable attorneys' fees." Client Service Agreement, Dkt. 31 at ECF page 40.  However, to the extent the Court denies plaintiff's motion for summary judgment, the Court also denies plaintiff's request for fees.

## CONCLUSION

For the reasons stated above, the Court grants defendants' motion for summary judgment seeking dismissal of this case in its entirety, and denies plaintiff's cross-motion for summary judgment. The Clerk of the Court is directed to enter judgment for defendants and to close this case.

**SO ORDERED**

Dated: Brooklyn, New York
March 27, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge
